## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EMMETT MESSICK**                                  **CIVIL ACTION**

**VERSUS**                                          **NO.  12-2945**

**BURL CAIN, WARDEN**                               **SECTION "N"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  On June 6, 2013, the United States Fifth Circuit Court of Appeal authorized Messick to file this successive petition.  Rec. Doc. No. 7; *see also*, *In re Messick*, No. 13-30168 (5th Cir. Jun. 3, 2013) (unp.).  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.      Factual and Procedural Background

The petitioner, Emmett Messick ("Messick"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On June 26, 1986, Messick was indicted by a Grand Jury in Orleans Parish for the second degree murder of Kelvin Thompson.[3]  Messick entered a plea of not guilty to the charge on July 8, 2006.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 2 of 5, Indictment, 6/26/86; Grand Jury Return, 6/26/86.

[4]St. Rec. Vol. 2 of 5, Minute Entry, 7/8/86.

The record reflects that, on June 1, 1986, nineteen-year-old Kelvin Thompson was shot and killed while riding a bicycle along Chef Menteur Highway in New Orleans.[5]  At that time, Messick and his passenger, Harold "Tiny" Allen, were driving on Chef Menteur Highway.  According to Allen, Messick pulled out his gun from under the driver's seat and pointed across the car towards the opened passenger window.  He shot at Thompson and said, "I like to wing them f--ing n--gers." Allen then grabbed the gun and kept it in his possession until the two men arrived at Allen's home. At that point, the two men went their separate ways, and Messick kept his gun.

Messick thereafter went to the St. Bernard Parish home of his sister, Patricia Frey, to ask for money.  She turned him away and he moved on to his other sister's home in LaPlace.  When they did not answer the door, he drove off and shot at two street lights with his gun. As a result, he was stopped by St. Charles Parish Sheriff's deputies and was charged with illegally discharging a weapon and driving with a suspended license.  Messick spent the night in jail on those charges.  After his release the next day, he went to Frey's house at some point and told her that he had shot a boy who was riding a bicycle.

Tiny Allen later read about a young black man being shot to death while bicycling on Chef Menteur Highway.  He feared that the victim was the man shot by Messick, and he contacted his attorney who in turn notified the police.  Frey also contacted the police when she heard about the biker's death.

---

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Messick*, 524 So.2d 117, 118-19 (La. App. 4th Cir. 1988); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, KA-8262, pp. 1-2, 4/12/88.

After Frey made her statement to the police, they obtained the gun seized from Messick at the time of his arrest in LaPlace.  The officers determined that it was the same type of gun used in the Thompson murder.  The officers obtained a warrant for Messick's arrest.

By this time, however, Messick had fled to Alabama.  He returned several days later and turned himself in to the authorities at which time he was arrested and charged with the murder.

Messick was tried before a jury on December 15 and 16, 1986, and was found guilty as charged of second degree murder.[6]  The trial court sentenced him on December 23, 1986, to serve life in prison.[7]

On direct appeal, Messick's counsel asserted four errors:[8] (1) the verdict was contrary to the law and evidence; (2) the trial court erred in allowing the State to admit the expert testimony of Dr. Paul McGarry and FBI Agent Charles Spaht; (3) the trial court erred in allowing the State to introduce other crimes evidence; (4) the trial court erred in allowing the written statement of Patricia Frey into evidence.  The Louisiana Fourth Circuit affirmed Messick's conviction and sentence on April 12, 1988, finding no merit in the first three claims and finding the fourth issue to be procedurally barred for lack of a contemporaneous objection.[9]

---

[6]St. Rec. Vol. 2 of 5, Trial Minutes, 12/15/86; Trial Minutes, 12/16/86; Jury Verdict, 12/16/86; Trial Transcript, 12/15/86; St. Rec. Vol. 3 of 5, Trial Transcript, 12/16/86.

[7]St. Rec. Vol. 2 of 5, Sentencing Minutes, 12/23/86.

[8]St. Rec. Vol. 3 of 5, Appeal Brief, KA-8262, 9/29/87; Assignment of Errors, 10/2/87.

[9]*Messick*, 524 So.2d at 117; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, KA-8262, 4/12/88.

On October 7, 1988, the Louisiana Supreme Court denied without stated reasons the writ application filed by Messick's counsel.[10] His conviction and sentence became final ninety (90) days later, on January 5, 1989, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (holding period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

At some point in 1991, Messick filed an application for post-conviction relief in which he raised four claims:[11] (1) the trial court erred in its jury instruction regarding reasonable doubt; (2) the jury selection process was racially biased; (3) the sentence was excessive; and (4) he received ineffective assistance of counsel. The trial court denied the application as meritless on February 26, 1992.[12] Messick did not seek review of this ruling.

On or about March 23, 1994, Messick filed a motion for the trial court to reconsider its prior post-conviction ruling on the issue of the reasonable doubt charge.[13] The trial court denied relief because the defense had not entered a contemporaneous objection at trial.[14] The Louisiana Fourth Circuit denied Messick's related writ application on May 31, 1994, finding no error in the trial

---

[10]*State v. Messick*, 531 So.2d 468 (La. 1988); St. Rec. Vol. 3 of 5, La. S. Ct. Order, 88-K-1191, 10/7/88; La. S. Ct. Writ Application, 88-K-1191, 5/12/88; St. Rec. Vol. 3 of 5, La. S. Ct. Letter, 88-K-1191, 5/13/88. Messick's Louisiana Supreme Court writ application did not include his fourth, procedurally defaulted claim.

[11]The record does not contain a copy of this application. Its filing in 1991 is conceded by the State in its response, and is referenced in Messick's more contemporaneous state court filings. *See e.g.*, St. Rec. Vol. 4 of 5, Brief in Support of Writ, p.4, dated 5/10/94.

[12]St. Rec. Vol. 4 of 5, Trial Court Judgment, 2/26/92.

[13]St. Rec. Vol. 5 of 5, Motion for Reconsideration, dated 3/23/94. Its filing in 1994 is conceded by the State in its response, and is referenced in Messick's other state court filings. *See e.g.*, St. Rec. Vol. 4 of 5, Brief in Support of Writ, p.4, dated 5/10/94.

[14]St. Rec. Vol. 4 of 5, Trial Court Judgment, 4/19/94.

court's ruling.[15]  On July 1, 1994, the Louisiana Supreme Court also denied Messick's writ application without stated reasons.[16]

Over nine years later, on September 1, 2003, Messick submitted to the trial court another application for post-conviction relief arguing that the trial court lacked subject matter jurisdiction over his case because of the discriminatory and unconstitutional grand jury selection process.[17]  The trial court denied relief because the defense did not contemporaneously object to the selection process or file a motion to quash the grand jury.[18]  The Louisiana Fourth Circuit denied Messick's related writ application on July 21, 2004, finding no error in the trial court's ruling.[19]  The Louisiana Supreme Court also denied Messick's related writ application without stated reasons on June 24, 2005.[20]

From this point forward, according to the parties, the record is somewhat incomplete due to the loss of some portions of it as a result of Hurricane Katrina.  Based on the available information, the following events appear to have occurred and are otherwise conceded by the parties.

On March 18, 2008, Messick submitted a fourth application for post-conviction relief to the state trial court alleging two claims: (1) he was in possession of newly discovered affidavits,

---

[15]St. Rec. Vol. 4 of 5, 4th Cir. Order, 94-K-0993, 5/31/94; 4th Cir. Writ Application, 94-K-0993, 5/23/94; Brief in Support of Writ, dated 5/10/94.

[16]*State ex rel. Messick v. State*, 639 So.2d 1171 (La. 1994); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 94-KH-1522, 7/1/94; La. S. Ct. Writ Application, 94-KH-1522, 6/10/94.

[17]St. Rec. Vol. 4 of 5, Application for Post-Conviction Relief, dated 9/1/03.

[18]St. Rec. Vol. 4 of 5, Trial Court Judgment, 5/11/04.

[19]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2004-K-1178, 7/21/04; 4th Cir. Writ Application, 2004-K-1178, 7/9/04 (dated 7/1/04).

[20]*State ex rel. Messick v. State*, 904 So.2d 731 (La. 2005); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2004-KH-2296, 6/24/05; La. S. Ct. Writ Application, 04-KH-2296, 9/10/04 (dated 8/5/04, postmarked 8/9/04).

including those of Mike Gorgues and his sister, Patricia Frey, which reflect his actual innocence and provide a reason to allow him to renew his untimely post-conviction review; and (2) the State withheld exculpatory evidence newly discovered in an initial police report not previously provided to the defense.[21]  Submitted therewith (but not filed stamped until March 28, 2009), was a motion to correct the record.[22]  In that motion, Messick argued that, in February of "2004," he sent his sister, Patricia Frey, an application for post-conviction relief based on newly discovered evidence of his actual innocence for her to file with the state trial court.[23]

Attached to the motion is a copy of a mail receipt indicating that an envelope was received by the Orleans Parish Clerk of Court on March 4, 2004.[24]  However, Messick later represents in his various pleadings that the original post-conviction application was not submitted to the state trial court until 2005, after he obtained affidavits from Frey and others to support his actual innocence claim.[25]  He indicates in his current federal petition that 2005 was the year in which he submitted that state application.[26]  The affidavits on which he so heavily relies also are not dated until January 11 and 12, 2005, and could not have been a part of a 2004 submission.  In fact, he now claims that he did not reconcile with his sister until April of 2004, making a filing in February or March 2004 an absolute impossibility.[27]  It appears that the more accurate possibility, as urged by the State, is

---

[21]St. Rec. Vol. 1 of 5, Uniform Application for Post-Conviction Relief, dated 3/18/08.

[22]*Id.*, Attached cover letter attached.

[23]St. Rec. Vol. 1 of 5, Motion to Correct, 3/28/09 (incomplete copy).

[24]St. Rec. Vol. 1 of 5, Mail Reciept, 3/4/04.

[25]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 12-KH-357, p. 1, 2/9/12.

[26]Rec. Doc. No. 19, p. 3.

[27]Rec. Doc. No. 19.

6

that Messick submitted his application in February or March of 2005 (not 2004) and it was misplaced or lost in the aftermath of Hurricane Katrina.  Messick does not refute this conclusion in his reply.

Messick's state court pleadings further indicate that, when his inquiries disclosed that the 2005 pleading could not be located by the clerk of the state trial court, he submitted a duplicate application on July 18, 2006, raising the same arguments.[28]  He also attached to the motion to correct copies of two other mail receipts for envelopes to the Court and the District Attorney's Office on August 2 and August 17, 2006, respectively.  The record does not contain any other proof of this filing in 2006.

Messick further claims to have supplemented the 2008 application on February 11, 2011, with claims that he had obtained new evidence contrary to the trial testimony of the coroner and related to the angle of the fatal gunshot.

The trial court considered his claims of new evidence of his innocence, including the affidavits from Frey and Gorgues, and denied relief on November 10, 2011, without making a determination as to the timeliness of the petition, and instead finding that nothing in the newly discovered evidence (affidavit or the police report) would warrant a new trial.[29]  The Louisiana Fourth Circuit denied Messick's related writ application on January 17, 2012, finding no error in the

[28]St. Rec. Vol. 1 of 5, Motion to Correct, 3/28/09 (incomplete copy); Mail Receipts, 8/2/06 and 8/17/06; St. Rec. Vol. 4 of 5, Application for Post-Conviction Relief, dated 7/18/06.

[29]St. Rec. Vol. 4 of 5, Trial Court Judgment, 11/10/11; Minute Entry, 11/14/11.

trial court's ruling.[30]  The Louisiana Supreme Court also denied Messick's writ application without stated reasons on September 21, 2012.[31]

## II.    **Federal Petition**

On January 17, 2013, the Clerk of this Court filed Messick's federal petition for habeas corpus relief.  Based on the limited remand from the Fifth Circuit, the only claims to be considered at this time are Messick's claims that there was insufficient evidence to support the verdict that was based on State coerced and perjured testimony as supported by the affidavits of Frey and Gorgues.[32] The State filed an answer in opposition to Messick's petition arguing that the petition is not timely filed, the insufficient evidence claim is not exhausted, and the claim is otherwise without merit.[33]

Messick, in response, contends that he began filing for relief in the state courts within one year of reconciling with his sister and locating Gorgues, making his federal petition timely.[34]  In addition, he claims that he would be entitled to equitable tolling and his claims have merit.

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition,  which is deemed filed in this Court by Messick under

---

[30]St. Rec. Vol. 4 of 5, 4th Cir. Order, 2011-K-1755, 1/17/12; 4th Cir. Writ Application, 2011-K-1755, 12/15/11 (dated 12/13/11).

[31]*State ex rel. Messick v. State*, 98 So.3d 323 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2012-KH-0357, 9/21/12; La. S. Ct. Writ Application, 12-KH-357, 2/9/12 (dated 2/7/12, postmarked 2/8/12).

[32]Rec. Doc. Nos. 3, 7.

[33]Rec. Doc. No. 18.

[34]Rec. Doc. No. 19.

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become

the federal mailbox rule on November 26, 2012.[36]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State contends that Messick's petition is not timely filed, and that he did not exhaust state court remedies on the issue of insufficient evidence based on the affidavits now presented.[37]  Messick did not specifically address the State's exhaustion defense and instead argues in his reply that his petition should be considered timely based on his efforts to seek state court review starting in 2005 when he obtained the affidavits.[38]

## IV.   Standard of Review of a Successive Petition by the District Court

As noted above, the Fifth Circuit has tentatively granted Messick permission to file a successive petition for writ of habeas corpus for review of his insufficient evidence claim based on the new affidavits from Frey and Gorgues tending to establish his actual innocence.  Under §

---

effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Messick's federal habeas petition on December 17, 2012, when the filing fee was received. Messick delivered the pleadings to the officials at the Louisiana State Penitentiary for electronic mailing to this Court on November 26, 2012.  Rec. Doc. No. 3, p. 8. The official stamps of the prison reflect that is the date on which he delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 376).

[37]Rec. Doc. No. 18.

[38]Rec. Doc. No. 19.

2244(b)(3)(C), the Fifth Circuit grants applications seeking leave to file a second or successive petition when, upon examining the petition and its supporting documents, "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive [petition]." *See Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)).  Under Fifth Circuit precedent, the required prima facie showing is "'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'"  *Id.*, 243 F. 3d at 898-99 (quoting *Bennett*, 119 F.3d at 469); *In re Swearingen*, 556 F.3d 344, 347 (5th Cir. 2009).

The appellate court's grant of permission to file a successive petition, however, does not automatically entitle a petitioner to review of the merits of the certified claim.  Instead, a petitioner who files a successive federal habeas corpus petition must go through a second hurdle in the District Court before the merits of his petition can be considered.  *Id.*, 243 F.3d at 899-900 & n.16; *In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003); *Brown v. Lensing*, 171 F.3d 1031 (5th Cir. 1999).  This is in part because, when the circuit court addresses a request for authorization to file a successive petition, it does not always have before it a fully developed record to consider other gatekeeping provisions such as timeliness and exhaustion.  *See*, *e.g.*, *In re McDonald*, 514 F.3d 539, 544 & n.3 (6th Cir. 2008).

As noted in the Fifth Circuit's authorization order, under § 2244(b)(4), the District Court is directed to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  *See In re Swearingen*, 556 F.3d at 349; *see also*, *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (finding the court of appeals may authorize a successive filing based on a prima facie

showing, but to survive dismissal in district court, the applicant must actually "sho[w]" that the claim satisfies the standard).

For the District Court's review under § 2244(b)(4), the bar to the filing of a second or successive petition for writ of habeas corpus may be excused in two circumstances: (1) where the petitioner shows that the claim relies on a new rule of constitutional law made retroactive on collateral review; or (2) where petitioner shows that the claim is based on a newly discovered factual predicate that could not have been discovered earlier with due diligence and the newly discovered evidence establishes by clear and convincing evidence that, but for the constitutional error, no reasonable jury could have found petitioner guilty. *See* 28 U.S.C. §2244(b)(2)(A), (B)(i)-(ii). The tentative certification by the Fifth Circuit was based on the second consideration.[39]

In reaching its tentative decision, the Fifth Circuit was not required to assess the credibility of the new evidence, i.e. the affidavits, or the application of state procedural bars. *See*, *In re Nealy*, 223 F. App'x 358, 364 (5th Cir. 2007) (citing *In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006)). Nor was the Fifth Circuit compelled to consider other federal procedural factors under the AEDPA such as timeliness and exhaustion. *In re McDonald*, 514 F.3d at 543-44 & n.3.

On the other hand, credibility and state procedural rulings are relevant to the District Court's determination as to whether a successive petitioner has met his burden under § 2244(b)(2). *See*, *In re Nealy*, 223 F. App'x at 364 (citing *In re Wilson*, 442 F.3d at 878). Considerations of timeliness and exhaustion under the AEDPA may also be considered by the District Court in resolving the viability of a successive claim or petition. *In re McDonald*, 514 F.3d at 544 & n.3. As a result, in accord with the AEDPA, factual findings made by the state courts related to credibility

---

[39]Rec. Doc. No. 7.

determinations, including that of recanting and new affidavits, are entitled to a strong presumption of correctness. *See Kinsel v. Cain*, 647 F.3d 265, 270 (5th Cir. 2011); *see also*, *In re Rutherford*, 437 F.3d 1125, 1127 (11th Cir. 2006) (relying on the factual findings of the state's highest court that a recanted statement was unbelievable and would not have changed the result of the trial).

Applying these standards and for the following reasons, the Court does not find that Messick has met his burden under § 2244(b)(2), (4).

**V.     Discussion**

**A.     No Applicable New Rule of Law under § 2244(b)(2)(A)**

Under the first prong, to the extent Messick relies on the Supreme Court's recent holding in *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924 (2013), he has not pointed to a basis for relief from the bar to successive filings.  In *McQuiggin*, the Supreme Court held that a prisoner filing a **first-time** federal habeas petition could overcome the one-year statute of limitations in § 2244(d)(1) upon a showing of "actual innocence." *Id.* at 1928.  This certainly is **not** Messick's first federal habeas petition, which takes him outside of those for whom the holding was intended. *See Ruff v. Perdue*, No. 13-CV-104, 2014 WL 4084326, at *5 (N.D. W.Va. Aug. 19, 2014).  Nothing in *McQuiggin* adds to the burden placed on a petitioner filing a successive petition. *See In re Warren*, 537 F. App'x 457, 457-58 (5th Cir. 2013).

In addition, as other federal courts have recognized, the Supreme Court has not declared its holding in *McQuiggin* to be retroactively applicable on collateral review. *See Teal v. Quintana*, No. 11-CA-241, 2014 WL 4435968, at *3 (E.D. Ky. Sep. 9, 2014); *Williams v. Holland*, No. 13-CV-239, 2014 WL 1385192, at *3 (E.D. Ky. Apr. 9, 2014).  Therefore, the holding in *McQuiggin* would not afford any relief to Messick who is pursuing collateral review.

The Fifth Circuit also has recognized that *McQuiggin* did not establish a claim of actual innocence as an independent ground for federal habeas corpus relief. *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013) (citing *McQuiggin*, 133 S. Ct. at 1931 and *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Coleman v. Thaler*, 716 F.3d 895, 908 (5th Cir. 2013); *In re Warren*, 537 F. App'x at 457. Thus, to the extent Messick would assert such a claim, he has failed to present a basis to overcome the bar to successive filings under § 2244(b)(2)(A).

### B.   No New Evidence and/or Timely Discovery under § 2244(b)(2)(B)(i), (ii)

As briefly discussed by the Fifth Circuit, the focus of Messick's entitlement to proceed with this successive petition requires consideration of the second prong of § 2244(b)(2)(B). This would require Messick to show that he has newly discovered evidence (the two affidavits) that could not have been discovered earlier with due diligence and which establish by clear and convincing evidence that, but for the constitutional error, no reasonable jury could have found petitioner guilty. In this case, Messick claims that, had the information now known from the Frey and Gorgues affidavits been presented to the jury at trial, or if they were to be shown to a new jury, the evidence would be insufficient to convict him.

The State argues in response that Messick has failed to establish that he could not have discovered the information at an earlier time. Specifically, the State argues that Messick should have known at the time of trial that his sister was lying since her testimony was that <u>he</u> told her that he shot the victim. He also failed to identify any of the dates and details of his alleged estrangement from his sister that purportedly lasted for over 17 years.

The State further argues that Messick has failed to provide any information with regard to Gorgues, such as when Messick first learned of Gorgues conversations with Allen. The State

contends that Messick instead only points to the date of Gorgues's affidavit, rather than the date on which the information contained therein was discovered by or conveyed to Messick. Without some time-line proven, the State argues that Messick has not met his burden to establish that he could not have learned the information from Gorgues at an earlier time.

In considering the relevance of the affidavits, the state trial court found that Frey's recanting affidavit was suspect when considered in light of her prior statements to police and at trial, and if presented to a new jury, would not be material in a manner that would produce a different verdict.[40]

The state trial court also found that Gorgues's affidavit addressed alleged statements by Harold "Tiny" Allen after trial and therefore constituted new evidence that could not have been known or been discovered by the defense at the time of trial. However, the trial court found that the content of the affidavit was suspect where Gorgues failed to disclose the information more timely to the proper authorities. Because of its suspect nature, the trial court resolved that it was not so material as to render a different verdict. Finding no credibility in these affidavits (and other allegedly new evidence not relevant here) and no likely effect on the verdict, the trial court ruled that Messick was not entitled to post-conviction relief. This was the last reasoned opinion from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (holding when the last state court judgment does not indicate the basis for its ruling, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The Supreme Court has long required petitioners bringing successive habeas claims to "support [their] allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that

---

[40]St. Rec. Vol. 4 of 5, Trial Court Judgment, 11/10/11.

14

was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In *Schlup*, the Supreme Court recognized that a "credible" and "compelling" claims of actual innocence can provide a "gateway" through certain procedural barriers, including successiveness. *See Schlup*, 513 U.S. at 324.

The lower federal courts have resolved that § 2244(b)(2)(B)(ii) incorporates the pre-AEDPA doctrine in *Schlup* to require that a petitioner present <u>new</u> and <u>reliable</u> evidence to warrant review of a successive claim. *See, e.g.*, *Munchinski v. Wilson*, 694 F.3d 308, 337 n.20 (3rd Cir. 2012); *United States v. MacDonald*, 641 F.3d 596, 612 (4th Cir. 2011). The AEDPA goes beyond that to require that the "new facts" together with all of the evidence must "be sufficient to establish by <u>clear and convincing</u> evidence" that no reasonable factfinder would have reached the guilty verdict. 28 U.S.C. § 2244(b)(2)(B)(ii); *Rivas v. Fischer*, 687 F.3d 514, 541 n.36 (2nd Cir. 2012) (finding that the clear and convincing standard under § 2244(b)(2)(B)(ii) is stricter than that required in *Schlup*).

In this case, the state courts resolved that the affidavits were suspect and lacking in sufficient credibility to call the verdict into question or warrant further review of his claims. These findings are entitled to a strong presumption of correctness. The record as a whole also supports the state courts' conclusion that neither affidavit is sufficient to establish by clear and convincing evidence that no jury would have reached the guilty verdict in this case.

### 1.      Frey's Affidavit

The first affidavit is that of Patricia Frey, Messick's sister, who claims that she lied to police and on the stand about Messick's confession to her about the shooting in part because of police coercion during questioning after her first statement and before trial.[41] New facts presented by a recanting affidavit, especially those brought years later, are subject to extreme suspicion. *Spence*

---

[41]St. Rec. Vol. 1 of 5, Frey Affidavit, 1/11/05.

*v. Johnson*, 80 F. 3d 989, 1003 (5th Cir. 1996); *see Komolafe v. Quarterman*, 246 F. App'x 270, 272-273 (5th Cir. 2007).

In this case, the trial testimony reflects that Frey voluntarily told police on or about June 3, 1986 that Messick confessed to her that he shot the victim.  Frey pursued these discussions with police on her own volition.  This date also is confirmed in her 2005 affidavit.

Contrary to her affidavit, however, it was over six months later, on December 12, 1986, when the district attorney filed a motion to have Frey taken into protective custody or placed on bond due to the likelihood that she would "depart or be taken from the jurisdiction" before she could testify at trial.[42]  The trial court granted the motion and she was arrested that same day.[43]

She later testified at trial that she agreed to stay under protective custody in a hotel provided by the district attorney's office.[44]  She also testified that she was not nervous or apprehensive about testifying against her brother.[45]

She further testified that, with the help of a friend, she contacted the police and gave the voluntary, recorded statement on June 3, 1986, regarding the information she learned from her brother about the shooting.[46]  She repeated to the jury that everything in her recorded statement was

---

[42]St. Rec. Vol. 2 of 5, Motion for Material Witness, 12/12/86.

[43]St. Rec. Vol. 2 of 5, Trial Court Order, 12/12/86; St. Rec. Vol. 3 of 5, Trial Transcript, p. 204 (Frey), 12/16/86.

[44]St. Rec. Vol. 3 of 5, Trial Transcript, p. 205 (Frey), 12/16/86.

[45]*Id*., at 205.

[46]*Id*., at 206-07.

true.[47]  She also confirmed that she gave the same statement to the grand jury a few weeks after his arrest.[48]

She testified that she saw Messick on the night of the shooting, although she did not know about the shooting at the time, and that he was extremely intoxicated and may have been on drugs.[49]  Two days later, he returned to her house, told her that he thought he shot the biker, and even described his bike and clothing to her.[50]  He told her that he told his friend Tiny to "duck" so he could "shoot this n--ger."[51]  She further testified that, when she went to get him in Alabama a few days after the shooting, he was not sure if he shot the young man, and that the information he told her had come from his friends Allen Sissum through Tiny.[52]  He also told her that, on the day of the shooting, he and Tiny had been working on a boat and truck and drove around shooting the gun.[53]

Messick testified that, on the day of the shooting, he and Tiny had done some mechanic work and had gone out to shoot his gun in the swamp.[54]  He also stated that, over the course of the day, he smoked some marijuana, took Valium, and drank large cans of beer and Amaretto.[55]  He

---

[47]*Id.*, at 209.

[48]*Id.*, at 210, 213.

[49]*Id.*, at 216-17, 225.

[50]*Id.*, at 209-10, 219.

[51]*Id.*, at 210.

[52]*Id.*, at 219, 223.

[53]*Id.*, at 227.

[54]*Id.*, at 286-87, 308-09.

[55]*Id.*, at 286.

considered himself intoxicated although he could remember some things and could drive.[56]  After they shot the gun in the swamp, he put it on the floorboard between them and drove around for a while looking for drugs and gas for the boats.[57]

Messick recalled that he was driving sixty-five or seventy on Chef Menteur Highway when Tiny picked up the gun and shot once out of the passenger window of the car.[58]  He did not know what he shot at because he was driving so fast.[59]  He testified that the rest of the evening was spent chasing down cash for gas for their boats to go shrimping and he eventually brought Tiny home.[60] This included one or two stops at the home of Allen Sissum.[61]

Later that night, he went to Frey's house and when he left there, he went to the home of his other sister, Anna Margaret, in La Place.[62]  Her husband had previously told him that if he showed up drunk at their house he would call the police.[63]  After no one answered at the home, he tried to leave only to be stopped and arrested by two police officers, whom he believed may have been called by his brother-in-law.[64]

---

[56]*Id.*, at 289.

[57]*Id.*, at 286-87, 308-09.

[58]*Id.*, at 288-89.

[59]*Id.*, at 289.

[60]*Id.*, at 290-93.

[61]*Id.*, at 290-91, 293.

[62]*Id.*, at 294-95.

[63]*Id.*, at 295.

[64]*Id.*, at 295-96.

After he was released from jail the next day, he talked to Allen about going shrimping. Allen told him that Tiny had been there telling him all about the shooting.[65] He later went to Frey's house and told her what Allen had told him.[66]

At trial, Messick denied ever firing the gun out of the passenger side window.[67] When directly asked, Messick did not actually deny shooting the victim; instead, he testified at trial that "I can't see myself doing something like that."[68] Messick confirmed on cross-examination that he did tell his sister that he shot the biker because that's what Allen Sissum had told him based on what Tiny told Sissum.[69]

The jury also heard the testimony from Harold "Tiny" Adams that Messick shot the biker through the passenger window, just as Frey indicated Messick had told her on the Monday night.[70] Tiny also testified that he had gunpowder residue on his left ear and hand after Messick shot the gun.[71]

Considering the evidence as a whole, the Frey affidavit fails to meet the burden set forth under § 2244(b)(2). First, the record does not establish that the information in Frey's affidavit is actually new or was not discoverable before the passing of 18 years. While both Frey and Messick suggest that their estrangement accounted for the delayed discovery of her false testimony, it does

---

[65]*Id.*, at 297.

[66]*Id.*, at 298.

[67]*Id.*, at 303-04.

[68]*Id.*, at 304.

[69]*Id.*, at 311-13.

[70]*Id.*, at 104-06, 112-13

[71]*Id.*, at 112.

not explain why Messick always contended that he did not confess to his sister and instead only repeated to her what he had been told he did.  In fact, a reading of the trial transcript reflects that the defense questioned Frey about whether Messick actually told her he did the shooting.  While Frey testified that he told her he shot the boy, she qualified her testimony by stating that Messick did tell her that his statements to her had been based on what Adams and Tiny told him happened.

The jury therefore already had before it information tending to show that Messick's statements to Frey were based on what he was told and not on what he knew or actually remembered.  The jury clearly did not believe it then, and there is nothing to establish that another reasonable jury would now.

Even more compelling is Messick's own trial testimony where he confirmed that he talked to Frey, and that she had repeated at trial what he told her.  While Messick presents the suspect affidavit of Frey to recant her testimony, he has offered no explanation for (or recanting of), his own testimony.  His testimony at trial confirmed that he told Frey the information about which she testified to in her statements to the police and her testimony at trial.  He too tried to justify the statements by stating that his statements were based only on what he was told by Adams and Tiny.

Thus, Messick never denied that he told these things to Frey, and instead confirmed by his testimony that he did tell her about the shooting just as she had attested.  For him to now rely on an affidavit which denies what he told her is wholly incongruous with his own trial testimony. Therefore, while Frey's affidavit is not altogether reliable or credible on its own, it most certainly does not establish by clear and convincing evidence that no reasonable jury would have found Messick guilty in light of Messick's testimony confirming that he did tell Frey the information she provided to the police and in her trial testimony.

2.      **Gorgues's Affidavit**

As resolved by the state courts, the affidavit from Gorgues without doubt presents information regarding alleged statements by Tiny made after trial and that could not have been known by the defense at trial.  This satisfies the requirement under § 2244(b)(2)(B)(i).  Before proceeding to the discussion of due diligence and the potential impact on the verdict under § 2244(b)(2)(B)(ii), the Court notes the most incredulous concern about the Gorgues affidavit.

A reading of the affidavit reflects that it was prepared for "Michael Gourgues Jr." and has a signature line for "Mike Gorgues Jr.," with a different spelling of the surname.[72]  The signature is spelled "Michael Gourgues Jr." and indicates that it was signed on January 12, 2005, in New Orleans.  It, however, apparently was not signed in front of a notary public in spite of the alleged signature and stamp of a St. Bernard Parish notary named "Luann Schulz Landry."  Instead, the affidavit bears a form-stamp in the lower corner completed and signed by Patricia Frey who claims to have been a witness to the signing of the document.

Most disturbing is the spelling of the name in the signature.  As noted, the signature is spelled "Michael Gourgues Jr."  Remarkably, that is not how Mike Gorgues spells his surname according to the record.  At trial, when Mike Gorgues was called to the stand by the defense, the following exchange occurred:[73]

BY THE COURT:
          . . . Call your next witness.

BY MR. DEFRANCESCH:
          Mike Gorgues.

                              [. . .]

---

[72]St. Rec. Vol. 1 of 5, Gorgues's Affidavit, 1/12/05.

[73]St. Rec. Vol. 3 of 5, Trial Transcript, p. 327, 12/16/86.

21

BY MR. PARKER:
    Excuse me, Your Honor, just for the r[e]cord, I don't even know this gentleman's name.

BY MR. DEFRANCESCH:
    Mike Gorgues.

BY MR. PARKER:
    How is that last named spelled.

BY MR. DEFRANCESCH:
    G-O-R-G-U-E-S.

In drafting and signing an affidavit of this magnitude, accuracy in at least spelling the affiant's name and his signature itself should be of utmost importance.  This does not bode well for a reliability and credibility determination.

Looking further to the content of the affidavit, there is no indication of the time frame or dates on which Gorgues spoke with Tiny to obtain these remarkably candid confessions.  At trial, Gorgues was called by the defense and testified that, on Monday, June 2, Tiny told him and Allen Sissum that he and Messick were riding around in the car and shooting the gun.[74]  He repeated several times that Tiny told them that he and Messick were both shooting.

As an initial matter, the information in Gorgues's affidavit regarding the dropped worthless checks charges is in no way new information.  All of the information related to those and other charges was brought out at trial when the defense attempted in depth to establish that Tiny received some sort of deal from the State in return for his testimony against Messick.  Clearly the jury did not believe that theory and there is nothing in Gorgues's affidavit to suggest that another reasonable jury would be so convinced.

---

[74]*Id.*, at 328-29.

Further, Gorgues testified at trial for the defense that Tiny admitted having some role in the shooting.  This was in direct conflict with Tiny's testimony at trial and tended to bolster the defense's theory that Tiny could have been the shooter.  Again the jury did not believe that theory.

To the extent the affidavit contends that Tiny later made inculpatory statements of his guilt, the evidence is not clear and convincing, nor is it supported or corroborated by any other evidence.  *See Komolafe*, 246 F. App'x at 272 (suggesting that an affidavit should be corroborated independent of the petitioner's anticipated testimony should he be retried).   As noted by the state trial court, there is no explanation offered for why Gorgues, under these circumstances, would not have gone to the authorities with information that Tiny later confessed to doing the shooting.  Gorgues had already testified that Tiny told him that he was involved.  Any further confirmation of his role in the shooting should have been timely reported.  Instead, Gorgues apparently waited until late 2004 or early 2005 to attest for Messick that he at some unknown time was told by Tiny that Tiny planned from the beginning to blame the shooting on Messick.  In addition, one arguable reading of the affidavit is that, on the day of the shooting (not some time later), Tiny told Gorgues of his intent to blame Messick since he was intoxicated.  If this is true, upon more thorough questioning of Gorgues, a defense trial witness, this information could have been discovered before or at trial.

Nevertheless, as emphasized in the state courts and by the respondent here, Messick has never clarified the timing of Gorgues's conversations with Tiny nor has he clarified when he learned or could have learned from Gorgues about the conversations.  A determination of due diligence is difficult without information, guidance, and proof from the petitioner.  Based on the record before the Court, Messick has not established that the information from Gorgues could not have been

discovered at an earlier time or that the unsupported information clearly and convincingly established that a reasonable jury would not have found him guilty.

Based on the foregoing, the Court finds that Messick has failed to establish a basis under either prong of § 2244(b)(2) for this Court to excuse and consider his successive petition; thus, his petition should be dismissed.

## VI.   **Failure to Exhaust**

In the alternative, should a reviewing court determine that Messick has met his burden under § 2244(b)(2), (4), his claims can be dismissed as unexhausted.  As noted above, this defense was raised by the State in its opposition.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997).  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing *Rose*, 455 U.S. at 519-20; 28 U.S.C. § 2254(b)(1)(A)).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court.  *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it

is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, 541 U.S. at 32.

The record reflects that, in his many applications for post-conviction relief and related writ applications between 2005 and 2011, Messick argued that the affidavits from Frey and Gorgues offered proof of his actual innocence and an excuse under La. Code Crim. P. art. 930.8 for his untimely pursuit of relief. He argued that the affidavits established that Frey and Tiny lied in their trial testimony, which could not stand to support his conviction. He made clear in his state court pleadings that he was raising a claim of actual innocence. As a free standing claim of actual innocence, he arguably has exhausted state court remedies in the Louisiana courts.

However, in his federal petition as recognized by the United States Fifth Circuit, Messick argues a claim of insufficient evidence based on the fact that Frey's testimony was coerced by the State and that Tiny's testimony was perjured at the encouragement of the State through a deal on his worthless check charges. It is on these claims of State coerced and perjured testimony that the tentative certification was based.[75] Messick did not argue or raise these specific claims in any of the

---

[75]Rec. Doc. No. 7.

state courts.  The state courts instead were called upon, with respect to these affidavits, to determine whether Messick stated a claim of actual innocence to warrant a new trial under state law.  That is not the federal constitutional issue raised here.

Thus, even under a broad reading, Messick has not exhausted his federal claims in the state courts.  The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  Furthermore, his *pro se* status does not excuse his failure to exhaust. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding *pro se* status does not constitute "good cause" for failure to exhaust state remedies); *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007) (finding ignorance of the law does not constitute "good cause" for failure to exhaust).

Therefore, should a reviewing court decide that he has met his burden to proceed with this successive petition, the petition can be dismissed without prejudice for Messick's failure to exhaust available state court remedies.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Messick's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as a prohibited second or successive petition under 28 U.S.C. § 2244(b)(4).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[76]

New Orleans, Louisiana, this 19th day of November, 2014.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[76]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.